■ In the Matter of ROY J. DICKINSON, Respondent-Appellant, v LEANN WOODLEY, Appellant-Respondent. KAREN R. CRANDALL, as Law Guardian, Appellant-Respondent. [843 NYS2d 854]—

---

* Shannon has filed a notice of appeal from this order.

Carpinello, J. Cross appeals from an order of the Family Court of Broome County (Charnetsky, J.), entered June 7, 2006, which partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' child.

The parties, who never married, are the parents of a son (hereinafter the child), born in 2003. Prior to the commencement of this custody proceeding in October 2005, the child resided with respondent, but had frequent, weekly overnight visitation with petitioner. While the parties' informal custodial arrangement was working well, petitioner commenced this proceeding based on concerns for the child's safety due to the escalating behavioral problems of his half brother, who also lived with respondent. Following a hearing, Family Court issued a temporary order granting the parties joint custody, but directing that the child's primary residence was to be with petitioner. Respondent was granted daily, weekday visitation (i.e., the child was to be with her on all days that the half brother was in school), as well as other periods of time as the parties could agree.

A trial thereafter ensued following which Family Court maintained joint custody between the parties and primary physical custody with petitioner. A similar daily, weekday visitation schedule was granted to respondent. She was also granted weekend visitation at least twice per month. Respondent and the Law Guardian now appeal.[1]

Respondent argues, and the Law Guardian agrees, that she should have been granted primary physical custody of the child since he had lived with her since birth, she was a dedicated and caring mother and because he and the half brother are siblings. We begin by noting that the primary consideration in custody proceedings is the best interest of the child (see *Eschbach v Eschbach*, 56 NY2d 167, 171 [1982]), with numerous factors taken into consideration by the court (see e.g. *Matter of Young v Collins*, 37 AD3d 1014, 1015 [2007]; *Matter of La Pointe v La Pointe*, 33 AD3d 1174 [2006]; *Matter of Anson v Anson*, 20 AD3d 603, 603-604 [2005], *lv denied* 5 NY3d 711 [2005]). Here, there is little dispute that the parties are both capable, fit and loving

---

1. Petitioner also filed a notice of cross appeal but he has apparently abandoned any arguments in support thereof as his brief seeks affirmance of Family Court's order.

parents. Moreover, petitioner is able to provide the child with a stable environment in a home that he shares with his parents, is gainfully employed and has worked well with respondent in the past concerning all parenting issues pertaining to the child. While respondent and the Law Guardian make much of the fact that petitioner "waited" until the child was over two years old to seek custody, we find his explanation for doing so at that time—increasing concerns over the half brother's behavior during the fall of 2005—to be entirely reasonable.

To be sure, the parties' informal custody arrangement during the child's initial years of life was a relevant factor to be considered in the overall analysis (*see e.g. Matter of Hissam v Mackin*, 41 AD3d 955, 956 [2007], *lv denied* 9 NY3d 809 [2007]; *Matter of Young v Collins, supra*; *Matter of Bessette v Pelton*, 29 AD3d 1085, 1087 [2006]). This being said, we note that petitioner spent a considerable amount of time with the child under this prior arrangement, with frequent, weekly overnight visitation. Moreover, although Family Court granted petitioner primary physical custody, liberal visitation provisions were made for respondent, which essentially amounted to visitation every day during the week and overnight visitation every other weekend.

It is clear that the determinative factor in granting primary custody to petitioner stemmed from concerns raised about the half brother's emotional problems and its potential impact on the child. In our view, Family Court gave appropriate weight to the evidence on this issue and fairly concluded that it tipped the scale in favor of petitioner being the child's primary custodian. The record reveals that the half brother (who was eight years old at the time of the hearing) has a history of significant behavioral issues.[2] As of that hearing, he had been previously hospitalized for his aggressive behavior, had been seeing a psychiatrist and a therapist for quite some time and was on medication for issues of aggression, acting out and attention deficit hyperactivity disorder.

In spite of services and medications, the record reveals that the half brother's behavior escalated during the fall of 2005, at times warranting police intervention and/or measures to remove the child from his half brother's presence.[3] Respondent's laudable efforts at addressing the half brother's problems while also

---

**2.** Indeed, respondent testified that she has been given a work exemption because of the half brother's problems.

**3.** Of further concern to petitioner during the fall of 2005 were certain measures taken by respondent to control the half brother, namely, having an inside deadbolt installed on the front door that could only be unlocked with a

keeping the child safe made this a difficult case indeed. Notwithstanding, viewing the totality of the circumstances and giving due deference to Family Court's fact findings (*see e.g. Rolls v Rolls*, 243 AD2d 906, 907 [1997]; *Matter of McGrath v Collins*, 202 AD2d 719, 720 [1994]), we find that a sound and substantial basis exists in the record to support its decision to award petitioner primary physical custody and further conclude that such determination is in the best interest of the child.

Cardona, P.J., Mercure, Crew III and Kane, JJ., concur. Ordered that the order is affirmed, without costs.

key and nailing certain windows shut. Both measures, in petitioner's view, raised safety issues for the child. As of the hearing, however, the nails had been removed from the windows and the inside deadbolt lock removed.